CHAPMAN PRICE STEEL CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 8511.

Circuit Court of Appeals, Seventh Circuit.

Dec. 15, 1944.

Loren E. Souers and Albert B. Arbaugh, both of Canton, Ohio, for petitioner.

Samuel O. Clark, Jr., Robert N. Anderson, Robert Koerner, and Newton K. Fox, all of Washington, D. C., Sewall Key, Asst. Atty. Gen., and J. P. Wenchel and John M. Morawski, of Washington, D. C., for respondent.

Before EVANS, MAJOR, and MINTON, Circuit Judges.

EVANS, Circuit Judge.

The Commissioner assessed, and the Tax Court sustained, a deficiency income tax of $1,895.83, against petitioner for the year 1939. From such adjudication, this appeal is prosecuted.

The controversy turns upon the status and effect of a $240,456 stock dividend made by petitioner, December 31, 1920.

The facts: The facts are stipulated, and as stipulated, were found by the Tax Court.

After February 28, 1913, and before December 31, 1920, petitioner, an Indiana corporation, accumulated surplus funds in excess of $240,456. All its stock was common. It declared a stock dividend in December, 1920, payable in common stock. The tax return involved is for the year 1938. Dispute arises from taxpayer's financial statement as of the close of 1938. On this date, its books showed a deficit of $136,192.18 in its earned surplus account. It was stipulated that this deficit was directly caused by the charge to the earned surplus account of the $240,456 stock dividend of 1920.

Legal Question: "Did the declaration and distribution of the stock dividend on December 31, 1920 constitute a distribution of accumulated earnings and profits for purpose of determining a dividends paid credit upon petitioner's 1939 corporate income tax return?"

If this dividend is one of the kind for which the applicable Revenue Act permitted a dividends paid credit, amounting to $3,718.46, the taxpayer was not liable for the deficiency tax here assailed. If it be found on the other hand, that due to the fact that the dividend was what is called a "true stock dividend," it is then entitled to no dividends paid credit on its earned surplus account, and is liable for the deficiency tax.

The Tax Court held that inasmuch as "a stock dividend, tax-free under rule of Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570, did not serve to reduce corporate earnings and profits available for future distribution * * * it must follow that such a stock dividend can not be considered as causing or contributing to the cause of a deficit in corporate earnings and profits."

The outcome of this appeal turns upon the statutes and their proper construction.

Set forth is the substance of Section 201 of the Revenue Act of 1918, 40 Stat. 1059. It is upon this section petitioner must rely.

"Sec. 201. (a) That the term 'dividend' * * * means (1) any distribution made by a corporation, * * * whether in cash or in other property or in stock of the corporation, out of its earnings or profits accumulated since February 28, 1913, * * *.

"(b) Any distribution shall be deemed to have been made from earnings or profits unless all earnings and profits have first been distributed. Any distribution made in the year 1918 or any year thereafter shall be deemed to have been made from earnings or profits accumulated since February 28, 1913, * * *.

"(c) A dividend paid in stock of the corporation shall be considered income to the amount of the earnings or profits distributed. * * *

"(d) If any stock dividend (1) is received by a taxpayer between January 1 and November 1, 1918, both dates inclusive, or (2) is during such period bona fide authorized or declared, and entered on the books of the corporation, and is received by a taxpayer after November 1, 1918, and before the expiration of thirty days after the passage of this Act, then such dividend shall, in the manner provided in section 206, be taxed to the recipient at the rates prescribed by law for the years in which the corporation accumulated the earnings or profits from which such dividend was paid, but the dividend shall be deemed to have been paid from the most recently accumulated earnings or profits."

Commissioner relies upon Section 115 (h), and Section 27(a), 26 U.S.C.A. Int. Rev.Code §§ 115(h) and 27(b), which read:

Revenue Act of 1936.

Sec. 115(h) "*Effect on earnings and profits of distributions of stock.* The distribution (whether before January 1, 1939, or on or after such date) to a distributee by * * * a corporation of its stock or securities, * * * or of property or money, shall not be considered a distribution of earnings or profits of any corporation—

"(1) if no gain to such distributee from the receipt of such stock or securities, property or money, was recognized by law, or

"(2) if the distribution was not subject to tax in the hands of such distributee because it did not constitute income to him within the meaning of the Sixteenth Amendment to the Constitution or because exempt to him under section 115(f) of the Revenue Act of 1934, 48 Stat. 712, or a corresponding provision of a prior Revenue Act."

"Sec. 27. Corporation dividends paid credit.

"(a) *Definition in general.* As used in this chapter with respect to any taxable year the term 'dividends paid credit' means the sum of:

"(1) The basic surtax credit for such year, computed as provided in subsection (b);

"(2) The dividend carry-over to such year, computed as provided in subsection (c);

"(3) The amount, if any, by which any deficit in the accumulated earnings and profits, as of the close of the preceding taxable year (whether beginning on, before, or after January 1, 1939), exceeds the amount of the credit provided in section 26(c) (relating to net operating losses), for such preceding taxable year (if beginning after December 31, 1937); * * *."

The Treasury Regulation is not printed, because, as to it, the petitioner argues that if its view be accepted, the Regulation cannot contravene the statute, a position which we accept.

The taxpayer states its position thus— The petitioner had accumulated funds in excess of $240,456 after February 28, 1913, and before the date the dividend was declared. It reduced this surplus through the stock dividend. The applicable statute, then in force, Section 201 of the Revenue Act of 1918, *unlike the successor sections*, provied specifically for stock dividend credits, and *no restriction was placed on the kind of dividend declared.* The language used was "any distribution made by the corporation, * * * whether in cash or in other property or in stock of the corporation, out of its earnings or profits accumulated since February 28, 1913."

Inasmuch as the earned surplus account as of the close of 1938 showed $136,192.18 loss which was "directly caused by the charge to said earned surplus account * * * of the stock dividend in the amount of $240,456" it necessarily follows

that the distribution was the proper basis for a dividends paid credit.

The respondent argues that the common stock dividend declared by petitioner, December 31, 1920, was not one which affected earnings and profits so that a deficit existed by reason thereof. Such a stock dividend was not taxable as income to the stockholder. Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570. In other words, a true stock dividend does not constitute a distribution of anything to the stockholders. The stockholders receive nothing out of the company's assets. The corporation is no poorer and the stockholders are no richer.

Congress enacted a dividends paid credit on the theory of the foregoing principles. The entire design of the credit allowance was a grant of a credit allowance to the corporation only when the distribution was taxable as income to the distributee. It therefore followed that a stock dividend is not a distribution of earnings and profits unless the law recognizes there was a gain to the stockholder and the distribution was subject to tax in the hands of the distributee.

This conception early found expression in the form of Treasury Regulations 103, promulgated under the Internal Revenue Code.

Our conclusion is that the Revenue Act must be read as a comprehensive system of taxation. On this phase of the subject we should read the sections which impose assessments with the sections which grant tax credit. If a dividend is not taxable to the recipient, its declaration can not give to the taxpayer a tax benefit. If we accept the reasoning in Eisner v. Macomber, supra, which we must, which declares that the receipt of a true stock dividend is not in reality a receipt of income, then its payment does not result in the depletion of the company's earned surplus so as to create a deficit thereby entitling it to a dividends paid credit.

Nor can we escape the result of this reasoning because of the language of the 1918 Revenue Act, which was more comprehensive in its definition or designation of the kinds of dividends which the taxpayer might declare and still be the basis of a dividends paid credit. That section, it is true, imposes no restriction on the kinds of dividends. It seems to us that Eisner v. Macomber, supra, the outcome of which was perhaps unexpected by the Congress that enacted Section 201 of the 1918 Revenue Act, cuts both ways. It voided the tax on the recipient of the dividend. On the other hand, it took from the corporation which declared the stock dividend the right to a deduction for a dividends paid credit based on such stock dividend. Why? Because Section 201 of the statute permits *deductions for distributions* by the taxpayer. In view of Eisner v. Macomber, supra, the corporation made no distribution when it declared a pure stock dividend. The stockholders received no distribution, save pieces of paper. They stood after declaration of the dividend just as they stood before.

The order of the Tax Court is affirmed.